UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT FRITH,<br><br>*Plaintiff*,<br><br>v.<br><br>WARNER BROS. DISCOVERY, INC., d/b/a TNT SPORTS f/k/a WARNER BROS. DISCOVERY SPORTS<br><br>*Defendant*. | Civil Action No. 4:24-cv-1116<br>Jury Demanded |

## ORIGINAL COMPLAINT

COMES NOW ROBERT FRITH ("Frith" or "Plaintiff") and complains of WARNER BROS. DISCOVERY, INC. d/b/a TNT SPORTS f/k/a WARNER BROS. DISCOVERY SPORTS ("WBD Sports" or "Defendant") as follows:

### NATURE OF THE CASE

1. Plaintiff complains that he was discriminated against regarding the terms and conditions of his employment and ultimately terminated because of a failure to accommodate his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12112 as well as the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.051(1).

### JURISDICTION AND VENUE

2. Defendant WBD Sports is subject to jurisdiction in Texas because it had physical offices and personnel in Texas (during the relevant time frame), regularly conducts business in Texas through broadcasting, and thus has systematic and continuous contacts with Texas subjecting it to general jurisdiction in Texas. In addition, the conduct

complained of happened in the Houston, Texas area and, therefore, the conduct complained of specifically arises from Defendant's employment of Plaintiff in Texas. Venue is appropriate in the Southern District of Texas, Houston Division because a substantial amount of the events giving rise to this suit occurred in Harris County, Texas.

3. The Court has subject matter jurisdiction because Plaintiff's claims arise under 42 U.S.C.A. § 12112. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 because those claims are so related to his federal claims that they form part of the same case.

## PARTIES

4. Plaintiff is a natural person residing in Harris County, Texas, and may be contacted and served through the undersigned counsel.

5. Defendant WBD is a Delaware corporation with its principal place of business in New York, New York. It may be served with process through its registered agent, THE CORPORATION TRUST COMPANY, CORPORATION TRUST CENTER, 1209 Orange St., Wilmington, DE 19801.

## STATEMENT OF FACTS

6. Frith began working for the former AT&T SportsNet Southwest ("AT&T") on or about August 12, 2012 as a coordinating producer. Upon the outbreak of the COVID pandemic in 2020 and the ensuing COVID vaccine (the "Vaccine"), AT&T implemented a policy requiring its employees to receive the Vaccine. Frith's physician recommended that due to known side effects of the Vaccine, that it would be unsafe for Frith to receive the Vaccine due to Frith's genetic/familial history of heart and other medical conditions

("Disability"). AT&T, based on Frith's doctor's recommendations, granted Frith an exemption from the Vaccine policy to accommodate his Disability.

7. Through a series of acquisitions, Frith became an employee of WBD Sports Division on or about December 26, 2021, in the Regional Sports Networks group.[1] At all relevant times, Frith maintained the position of coordinating producer. In this role, he was responsible for the oversight and management of the production of live sporting events, including the Houston Astros. Frith reported directly to Tim Brown, former Executive Producer, Regional Sports Networks, who reported to David Peart, Assistant Vice President, Regional Sports Networks. Notably, Frith's job duties did not change from AT&T's ownership to WBD Sports Division.

8. WBD Sports required Frith to submit another exemption application in June of 2022 – midway through the baseball season. This request came after multiple comments from management deriding those who had not taken the Vaccine and discounting any justification for an exemption from the Vaccine. Frith was unsettled by the comments and the demand for a renewed Vaccine exemption application because: 1) his Disability was permanent and, therefore, the reasons for the prior exemption would not change and 2) the baseball season was already nearly halfway through, the COVID pandemic had largely subsided, and, therefore, there was no possible circumstances in the nature of WBD Sports' business that could have changed its ability to provide Frith the accommodations that had been previously afforded to him by AT&T. Moreover, WBD Sports imposed strict mask mandates while on the job. Masks, according to mask proponents and the CDC, are

---

[1] Subsequent to Frith's constructive discharge from WBD, WBD Sports Division became known as "TNT Sports".

effective tools at preventing the spread of COVID. Frith was informed that employees who were not "fully vaccinated" from COVID by September 6, 2022 would not be allowed in company workspaces or to perform services and would be terminated *unless* their request for an exemption was approved.

9. Concerned about management comments and the draconian policy, Frith submitted another application for exemption that included documentation from his physician and his medical conduction and that his life would be threatened from receiving the Vaccine. As the weeks went by and the "D-day" of September 6, 2022 approached, WBD Sports failed to provide any answer on Frith's request for an exemption, despite the fact that he checked the status of the exemption every week and despite the fact that the he was one of the very first employees requesting the exemption. More concerning was the fact that WBD Sports announced that even if the exemption was granted, that WBD Sports reserved the "right to change or discontinue the approval at any time".

10. Based on the continual and inexplicable failure to accommodate Frith's heart condition disability, the hostility of management toward anyone who did not receive the Vaccine (regardless of reason), and the fact that management reserved the right to arbitrarily revoke the exemption for any rhyme or reason, Frith began to seek alternative employment in the event he was terminated because of his Disability. Frith came upon a position that required him to accept the position or risk losing it if he waited until the eleventh hour for WBD Sports to approve his exemption. Frith followed up multiple times trying to get answers, but each time was brushed off without sufficient explanation of why WBD Sports would not grant the same exemption that had allowed him to work in the same

position for the prior two years or how WBD Sports was in a better position than his doctor to determine whether he should receive the Vaccine.

11. Ultimately, based on all of the conduct described above, Frith believed that he had no choice but to resign or risk being unemployed due to WBD Sports arbitrary and capricious refusal to timely grant his accommodation and overt hostility to his Disability. A reasonable person would not sit under the sword of Damocles, waiting for the armchair epidemiologists WBD Sports to grant his exemption after their inexplicable delay, which would only be subject to their right to revoke it at any time. Frith was constructively discharged due to his Disability and WBD Sports' refusal to accommodate it and, therefore, resigned his position to take a different job making less money and with less benefits.

## CAUSES OF ACTION

### Count 1:

### Count 1: VIOLATION OF ADA (FAILURE TO ACCOMMODATE)

12. Plaintiff reincorporates all preceding paragraphs by reference.

13. Plaintiff has a Disability. Defendant violated Plaintiff's rights by failing to accommodate Plaintiff's Disability. Defendant has no grounds to contend that the accommodation of the Disability was done by prior management without issue. Defendant's failure to accommodate Plaintiff's Disability was the cause of his termination (constructive discharge) and caused him damages. Defendant is liable to Plaintiff for all damages allowed under law, including all economic, compensatory, and exemplary damages, attorney fees, court costs, and pre- and post-judgment interest at the highest rates allowed by law.

### Count 2: DISCRIMINATION UNDER THE

## TEXAS COMMISSION ON HUMAN RIGHTS ACT

14. Plaintiff reincorporates all preceding paragraphs by reference.

15. The conduct of the Defendant towards Plaintiff, through their agents, employees, managers, and supervisors, as set forth above, among other activities constitutes discrimination on the basis of his Disability, in direct violation of §21.001, et. seq., Labor Code, Vernon's Texas Codes Annotated, which states, in pertinent part, that:

> "An employer commits an unlawful employment practice if...the employer...discriminates against an individual...or...classifies an employee...in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee."

16. Plaintiff's Disability was the determining or motivating factors in Defendant's employment decisions regarding Plaintiff, including the decision to terminate Plaintiff's employment. Plaintiff's Disability moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

## CONDITIONS PRECEDENT

17. All conditions precedent to Plaintiff's claims have occurred or have been waived.

## JURY DEMAND

18. Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a. awarding actual damages;

b. mental anguish damages;

  c. awarding reasonable attorney's fees;

  d. exemplary damages;

  e. pre-and post-judgment interests and costs; and

  f. all other relief to which Plaintiff is entitled in law or equity.

Dated: March 27, 2024.

       Respectfully submitted,

       CAMARA & SIBLEY LLP

       /s/ Joseph D. Sibley
       Joseph D. Sibley
       State Bar No. 24047203
       sibley@camarasibley.com
       Camara & Sibley LLP
       1108 Lavaca St
       Suite 110263
       Austin, Texas 78701
       Telephone: (713) 966-6789
       Fax: (713) 583-1131

       **ATTORNEYS FOR PLAINTIFF**